# IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF ALABAMA

| | | |
|---|---|---|
| **ALIMIREO ENGLISH,** | ) | |
| **PLAINTIFF,** | ) | |
| **V.** | ) | **CASE NO.:** |
| **CHUCK STEVENS** | ) | |
| **AUTOMOTIVE, INC., SHARON** | ) | **PLAINTIFF DEMANDS TRIAL** |
| **STEVENS, AND VERNON PUGH,** | ) | **BY STRUCK JURY** |
| **DEFENDANTS.** | | |

## COMPLAINT

## JURISDICTION

1.     This action for injunctive relief and damages is brought under 28 U.S.C. §§ 1331, 1343(4), 2201, 2202, 29 U.S.C. § 2617(a)(2), The Family and Medical Leave Act. The jurisdiction of this Court is invoked to secure protection for and to redress the deprivation of rights caused by the Defendant.

2.     This suit is authorized and instituted under Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended, the "Civil Rights Act of 1991;" 42 U.S.C. § 2000e, et seq. (Title VII).

3.     This suit is authorized and instituted under 42 U.S.C. § 1981. This is a suit authorized and instituted under "Section 1981."

4.     This Complaint seeks legal and equitable relief for the defendant's under Alabama law pursuant 28 U.S. Code § 1367.

5.     Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) within 180 days of the last discriminatory act (Exhibit A).  Plaintiff further sued within ninety (90) days after receipt of the right-to-sue letter issued by the EEOC (Exhibit B).

## PARTIES

6.     Plaintiff, Alimireo English, ("Plaintiff" or "English") is a resident of Bay Minette, Baldwin County, and performed work for the Defendant in the counties composing the Southern District during the events of this case.  Thus, under 28 U.S.C. § 1391(b), venue for this action lies in the Southern District of Alabama.

7.     Defendant Chuck Stevens Automotive, Inc. ("Defendant") is a company registered and doing business in the State of Alabama and has sufficient minimum contacts with the State of Alabama that it is subject to service of process in Alabama.

8.     Defendant Sharon Stevens. ("Stevens") is a is a resident of Fairhope, Baldwin County, Alabama.

9.     Defendant Vernon Pugh, III. ("Pugh") is a is a resident of Bay Minette, Baldwin County, Alabama.

10.    Defendant employed at least fifty (50) people for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year. Defendant employed these fifty (50) employees within 75 miles of Plaintiff's worksite.

11.    Chuck Stevens Automotive and its related entities in Mississippi have more than 100 but less than 200 employees.

## FACTS

12.    Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

13.    English is a man of African ancestry, colloquially referred to as "African American" or "Black."

14.    Plaintiff began his employment with defendant on or about February 1, 2019, as a Floor Manager.

15.    Plaintiff consistently ranked as one of the top producing salespeople at the Defendant's dealership.

16.    Plaintiff had a spotless record of conduct and performance at the Defendant's dealership.

17.    On or about March 13, 2020, a fellow employee, Steven Bradley sent the Plaintiff unsolicited, sexually explicit photos.

18.     Plaintiff asked Bradley to stop and reported the inappropriate conduct to the Defendant via his manager, Thomas De Santi, as company policy requires.

19.     After reporting this sexually inappropriate conduct, the Defendant retaliated against the Plaintiff by conducting a false investigation for "stealing leads," and took away the Plaintiff's access to leads at Bradley's location, thus limiting the opportunity to make commission.

20.     On June 25, 2020, Plaintiff became ill with Covid-19.

21.     Plaintiff reached out to the Defendant via Thomas De Santi to report his diagnosis and presented a doctor's note saying he would need to quarantine.

22.     De Santi relayed this information to Defendant's employee and wife of the owner, Sharon Stevens, who contacted the Plaintiff.

23.     Mrs. Stevens asked the Plaintiff for the doctor's note, to which the Plaintiff obliged.

24.     Mrs. Stevens then asked the Plaintiff to provide her with his lab results.

25.     At this request, the Plaintiff told her he would try to get them, and asked about his pay under the Families First Act.

26.     Plaintiff then informed Mrs. Stevens that she was supposed to go through Human Resources to get the certification for his FMLA benefits.

27.     Mrs. Stevens then told the Plaintiff that he would not be paid unless he provided the actual lab results from his Covid-19 test.

28.     Plaintiff pointed out to Defendant's employee, Mrs. Stevens, that he was being treated differently than his white, female co-workers who were not required to provide such documentation when they requested to use their FMLA benefits.

29.     Mrs. Stevens told the Plaintiff she would speak to her attorney and get back with him.

30.     When Mrs. Stevens called the Plaintiff back, she fired him on the spot and told him that "Alabama is an at-will state."

31.     Plaintiff informed Mrs. Stevens that her adverse employment actions were discriminatory.

32.     Mrs. Stevens then inappropriately told English that she was incapable of being racist because she has a mixed-race child.

33.     After the encounter, Mrs. Stevens falsely claimed that English had resigned.

34.     Defendant terminated English's employment on or about July 3, 2020.

35.     English soon after advised Defendant that he would be filing a Charge of Discrimination with the EEOC due to the discriminatory treatment and termination.

36.     English filed a charge with the Equal Employment Opportunity Commission ("EEOC") on September 2, 2020, alleging racial and sexual discrimination.

37.     Defendant retaliated against English after he informed them that he would be filing charges with the EEOC by having two employees file criminal charges against him in the City of Bay Minette.

38.     Sharon Stevens and her son, Vernon Pugh, III filed criminal complaints in the City of Bay Minette for Criminal Trespass and Harassing Communications.

39.     As a result of those charges, English was arrested and held without bond.

40.     During that detention, the State of Alabama instituted parole revocation proceedings against Mr. English.

41.     During the Parole hearing, Sharon Stevens testified that she filed the charges because he was fired because he was Black

42.     As a result of those proceedings, English's parole on a life sentence was revoked.

43.     English remained incarcerated on the revocation until the misdemeanor cases filed by the Defendants were tried.

44.     English was acquitted of the baseless charges.

45.     These charges have been detrimental to English and have led to him being arrested twice, losing his freedom, and losing opportunities for future employment.

## COUNT I: TITLE VII - RACE

46.     Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

47.     English is a person of African ancestry colloquially referred to as "black" or "African American."

48.     English was qualified for the position of floor manager.

49.     On June 25, 2020, Plaintiff became ill with Covid-19.

50.     Plaintiff reached out to the Defendant via Thomas De Santi to report his diagnosis and presented a doctor's note saying he would need to quarantine.

51.     De Santi relayed this information to Defendant's employee and wife of the owner, Sharon Stevens, who contacted the Plaintiff.

52.     Mrs. Stevens asked the Plaintiff for the doctor's note, to which the Plaintiff obliged.

53.     Mrs. Stevens then asked the Plaintiff to provide her with his lab results.

54.     At this request, the Plaintiff told her he would try to get them, and also asked about his pay under the Families First Act.

55.     Plaintiff then informed Mrs. Stevens that she was supposed to go through Human Resources to get the certification for his FMLA benefits.

56.     Mrs. Stevens then told the Plaintiff that he would not be paid unless he provided the actual lab results from his Covid-19 test.

57.     English was treated differently than his white, female co-workers who were not required to provide such documentation when they requested to use their paid FMLA benefits.

58.     White, female co-workers engaged in the same or similar conduct but remained employed.

59.     Defendant's actions in requiring extra documentation and refusing to pay for time off for COVID violated Title VII.

60.     Because of Defendant's violation of Title VII, English has been damaged, suffering loss of pay and benefits.

61.     Defendant's Race was a motivating factor in Defendant's decision to require extra documentation and deny payment.

62.     Because of Defendant's discriminatory decision made in whole or in part because of his race, English has lost pay and continues to be paid less.

## COUNT II:  42 U. S. C. § 1981

63.     English incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

64.     English is a person of African ancestry colloquially referred to as "black" or "African American."

65.     English was qualified for the position of floor manager.

66.     On June 25, 2020, Plaintiff became ill with Covid-19.

67.     Plaintiff reached out to the Defendant via Thomas De Santi to report his diagnosis and presented a doctor's note saying he would need to quarantine.

68.     De Santi relayed this information to Defendant's employee and wife of the owner, Sharon Stevens, who contacted the Plaintiff.

69.     Mrs. Stevens asked the Plaintiff for the doctor's note, to which the Plaintiff obliged.

70.     Mrs. Stevens then asked the Plaintiff to provide her with his lab results.

71.     At this request, the Plaintiff told her he would try to get them, and also asked about his pay under the Families First Act.

72.     Plaintiff then informed Mrs. Stevens that she was supposed to go through Human Resources to get the certification for his FMLA benefits.

73.     Mrs. Stevens then told the Plaintiff that he would not be paid unless he provided the actual lab results from his Covid-19 test.

74.     English was treated differently than his white, female co-workers who were not required to provide such documentation when they requested to use their paid FMLA benefits.

75.     Defendant's actions in requiring extra documentation and refusing to pay for time off for COVID violated Title VII.

76.     Because of Defendant's violation of Title VII, English has been damaged, suffering loss of pay and benefits.

77.     Defendant's Race was a motivating factor in Defendant's decision to require extra documentation and deny payment.

78.     Because of Defendant's discriminatory decision made in whole or in part because of his race, English has lost pay and continues to be paid less.

79.     Because of Defendant's discriminatory decision made in whole or in part because of his race, English has lost pay.

80.     Because of Defendant's violation of 42 U. S. C § 1981, English has been damaged, suffering loss of pay, benefits, and mental anguish.

81.     Defendant's decision to terminate English's employment was made, in whole or part, because of its race in violation of 42 U. S. C. § 1981.

## COUNT III:  TITLE VII RETALIATION

82.     English incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

83.    English was qualified for the position and able to perform the essential functions of the job.

84.    On or about June 26, 2020, English engaged in protected activity, when he reported discrimination based on race.

85.    On or about July 3, 2020,  Mr. Stevens & wife Sharon terminated English's employment.

86.    But for English's protected activity, Defendant would have retained English in the position as a Floor Manager.

87.    Defendant violated Title VII by terminating English for engaging in protected activity.

88.    On or about July 3, 2020, English engaged in protected activity, when he reported discrimination on the basis of race.

89.    Defendant retaliated against the English by having two employees file criminal charges against the English in August of 2020.

90.    Defendant violated Title VII by retaliating against the English for reporting discrimination.

91.    Because of Defendant's violation of Title VII, English has been damaged suffering loss of pay, benefits, opportunities for future employment, liberty, freedom, and mental anguish.

## COUNT IV: 42 U. S. C. § 1981 RETALIATION

92.     English incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

93.     English was qualified for the Floor Manager position and able to perform the essential functions of the job.

94.     On or about June 26, 2020, English engaged in protected activity, when he reported discrimination based on race.

95.     On or about July 3, 2020, Mrs. Stevens terminated English's employment.

96.     Defendant violated the 42 U. S. C. § 1981 by terminating English in whole or in part for engaging in protected activity.

97.     Because of Defendant's violation of 42 U. S. C. § 1981, English has been damaged suffering loss of pay, benefits, opportunities for future employment, liberty, freedom, and mental anguish.

## COUNT V:  TITLE VII – SEX-

98.     English incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

99.     English is a Male.

100.    English was qualified for the Floor Manager position.

101.    Defendant's employee, Mrs. Stevens, terminated English's employment on or about July 3, 2020.

102.   White, female co-workers sought pay for the time off due to COVID but were not required to submit additional substantiation to receive compensation.

103.   These white, female co-workers are not in the same protected class.

104.   Because of Defendant's violation of Title VII, English has been damaged, suffering loss of pay and benefits.

105.   English's sex was a motivating factor in Defendant's decision to terminate English's employment.

106.   Because of Defendant's discriminatory decision made in whole or in part because of sex, English has lost pay.

## COUNT VII: TITLE VII - RETALIATION

107.   English incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

108.   English was qualified for the position and able to perform the essential functions of the job.

109.   On or about June 25, 2020, English engaged in protected activity, when he reported discrimination based on sex.

110.   On or about July 3, 2020, Mrs. Stevens terminated English's employment.

111.   But for English's protected activity, Defendant would have retained English in the Floor Manager position.

112.   Defendant violated Title VII by terminating English for engaging in protected activity.

113.   Because of Defendant's violation of the Title VII, English has been damaged suffering loss of pay, benefits, and mental anguish.

## COUNT VIII: FMLA INTERFERENCE

114.   Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

115.   During the 12-month period before, Defendant employed English for at least 1,250 hours of service.

116.   Defendant employs fifty (50) or more persons for each working day during each of the 20 or more calendar workweeks in the current or preceding calendar year of English's health issues related to Covid-19.

117.   During the week of June 25, 2020, Defendant employed fifty or more employees, worked within 75 miles of the location where English worked.

118.   On June 25, 2020, English provided notice of unforeseeable FMLA leave to quarantine for Covid-19.

119.   English provided notice of his unforeseeable need of FMLA leave the same day that the need for FMLA leave arose.

120.   Before June 25, 2020, English had never informed Defendant of the need for FMLA leave.

121.   Defendant failed to provide English with a Notice of Eligibility and Rights and Responsibilities form.

122.   Defendant failed to provide English with an FMLA Designation Notice form.

123.   Defendant failed to provide English with an FMLA Certification of Health Care Provider for Employee's Serious Health Condition form OR FMLA Certification of Health Care Provider for Family Member's Serious Health Condition form.

124.   Defendant interfered with English's FMLA rights by not allowing him to commence leave.

125.   On July 3, 2020, Defendant terminated English's employment without explanation.

126.   Defendant's employees knew that English suffered from FMLA qualifying conditions for which he needed to miss more than three consecutive days of work.

127.   Because of Defendant's interference with English's rights under the FMLA, English has been damaged, suffering loss of pay and benefits.

## COUNT IX:  FMLA RETALIATION

128.   English incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

129.   During the 12-month period before June 25, 2020, Defendant employed English for at least 1,250 hours of service.

130.   Defendant employs fifty (50) or more persons for each working day during each of the 20 or more calendar workweeks in the current or preceding calendar year before June 25, 2020.

131.   During the week of June 25, 2020, Defendant employed fifty or more employees, worked within 75 miles of the location where English worked.

132.   On June 25, 2020, English provided notice of unforeseeable FMLA leave to Thomas De Santi and Sharon Stevens.

133.   English provided notice of his unforeseeable need of FMLA leave as soon as practicable due to his medical emergency.

134.   Before June 25, 2020, English had never informed Defendant of a need for FMLA leave.

135.   Defendant willfully failed to provide English with a Notice of Eligibility and Rights and Responsibilities form.

136.   Defendant willfully failed to provide English with an FMLA Designation Notice form.

137.   Defendant willfully failed to provide English with an FMLA Certification of Health Care Provider for Employee's Serious Health Condition form.

138.   Defendant terminated English's employment on July 3, 2020.

139.   Defendant's employees knew that English suffered from FMLA qualifying conditions for which he needed to quarantine per his doctor starting June 25, 2020.

140.   Defendant's employee, Sharon Stevens, decided to terminate English's employment.

141.   Defendant's employee, Mrs. Stevens, decided to terminate English's employment, in whole or part, because of English's intent to exercise his FMLA rights.

142.   Because of Defendant's retaliatory termination decision in violation of the FMLA, English has been damaged, suffering loss of pay and benefits.

## COUNT X: TITLE VII - RETALIATION

143.   English incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

144.   English was qualified for the position and able to perform the essential functions of the job.

145.   On or about March 13, 2020, English engaged in protected activity, when he reported sexually inappropriate text messages he received from Stephen Bradley, Defendant's employee.

146.   Immediately after Plaintiff made the complaint, the Defendant accused English of "stealing leads.'

147.   English had not stolen leads.

148.   As a result of the false claims of lead stealing, Defendant limited Plaintiff's access to deals at one of its dealerships, thereby reducing his earnings.

149.   But for English's protected activity, Defendant would have allowed Plaintiff to make deals at all its locations.

150.   Defendant violated Title VII by reducing English's access to deals for engaging in protected activity.

151.   Because of Defendant's violation of Title VII, English has been damaged suffering loss of pay, benefits, and mental anguish.

## COUNT XI:  TITLE VII RETALIATION

152.   English incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

153.   During the period after his discharge, English engaged in protected activity, when he made Facebook posts that indicated that he would be filing EEOC charges for his termination and told Sharon Stevens that he would be filing a Charge of Discrimination.

154.   English, did in fact file a Charge of Discrimination on or about September 2, 2020.

155.   In September 2020, Sharon Stevens and Stephen Pugh, both employees or owners of Chuck Stevens Automotive, made false reports to the City of Bay Minette with the intent of having English arrested and convicted.

156.   The complaints lodged by Stevens and Pugh did, in fact result in English's arrest and incarceration on a life sentence.

157.   As a result of Pugh and Stevens' complaints, the State of Alabama initiated Parole Revocation proceedings.

158.   During the Parole Revocation, Mrs. Stevens testified that she made the complaint because Mr. English was saying that the Defendant discriminated against him in his employment on social media.

159.   But for English's protected activity, Defendant would not have made the criminal complaints.

160.   Defendant violated Title VII by terminating English in whole or in part for engaging in protected activity.

161.   Defendant retaliated against the English by having two employees file criminal charges against the English in August of 2020.

162.   But for English's protected activity, those employees would never have filed criminal charges against him.

163.   Defendant violated Title VII by retaliating against English for reporting discrimination.

164.   Because of Defendant's violation of Title VII, English has been damaged suffering loss of pay, benefits, opportunities for future employment, liberty, freedom, and mental anguish.

## COUNT IV: 42 U. S. C. § 1981 RETALIATION

165.   English incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

166.   During the period after his discharge, English engaged in protected activity, when he made Facebook posts that indicated that he would be filing EEOC charges for his termination.

167.   In September 2020, Sharon Stevens and Stephen Pugh, both employees or owners of Chuck Stevens Automotive, made false reports to the City of Bay Minette with the intent of having English arrested and convicted.

168.   The complaints lodged by Stevens and Pugh did, in fact result in English's arrest and incarceration on a life sentence.

169.   During the Parole Revocation, Mrs. Stevens testified that she made the complaint because Mr. English was saying that the Defendant discriminated against him in his employment on social media.

170.   But for English's protected activity, Defendant would not have made the criminal complaints.

171.   Defendant violated Title VII by terminating English in whole or in part for engaging in protected activity.

172.   Defendant retaliated against the English by having two employees file criminal charges against the English in August of 2020.

173.   But for English's protected activity, those employees would never have filed criminal charges against him.

174.   Defendant violated 42 U. S. C. § 1981 by retaliating against the English for reporting discrimination.

175.   Because of Defendant's violation of 42 U. S. C. § 1981, English has been damaged suffering loss of pay, benefits, opportunities for future employment, liberty, freedom, and mental anguish.

## COUNT XI MALICIOUS PROSECUTION – AGAINST STEVENS AND PUGH

176.   Defendants instituted judicial proceeding in the Bay Minette Municipal Court against English.

177.   Defendants had no probable cause to bring charges against English

178.   Defendants acted with malice in bringing those charges.

179.   English was acquitted of those charges.

180.   As a result of the false and baseless charges, English was damaged including loss of income, legal expenses, and the loss of his liberty.

## PRAYER FOR RELIEF

WHEREFORE, English respectfully prays for the following relief:

A.    Grant English a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting with the Defendant and at the Defendant's request from continuing to violate the terms of Title VII of the Civil Rights Act of 1964;

B.    Grant English a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting with the Defendant and at the Defendant's request from continuing to violate the terms of Section 1981;

C.    Grant English a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting with the Defendant and at the Defendant's request from continuing to violate the terms of the Family and Medical Leave Act;

D.    Enter an Order requiring the Defendant to make English whole by awarding reinstatement to the position she would have had, had she not been terminated;

E.    Award back pay, with employment benefits, front pay, liquidated damages; compensatory damages, special damages; punitive damages nominal damages;

F.    Attorneys' fees and costs;

G.     English requests that the Court award English equitable relief as provided by law; and,

H.     Any different or additional relief as determined by the Court to which English is entitled.

## JURY TRIAL DEMANDED

Kira Fonteneau

**OF COUNSEL:**

The Fonteneau Firm LLC
2 20th Street N, Suite 900
Birmingham, AL 35203

PLEASE SERVE DEFENDANT AS FOLLOWS

Charles Stephens
1304 Highway 31 South
Bay Minette, Al 36507

Sharon Stevens
11237 County Road 1
Fairhope, AL 36532

Vernon Pugh III
40285 State HWY 59
Bay Minette, AL 36507

## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF ALABAMA
## MOBILE DIVISION

**Alimireo English,**

**Plaintiff(s),**

**v.**                                                    **Case No.:**

**Chuck Stevens Automotive, Inc.,**
**Sharon Stevens, and Vernon Pugh**
**III,**

**Defendant(s).**


## EXHIBIT A

Received by EEOC on 09/02/2020

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION<br><br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | Charge Presented To:<br><br>FEPA<br><br>EEOC 420-2020-02988 | Agency(ies) Charge No(s): |
|---|---|---|
| | | and EEOC |

State or local Agency, if any

| Name *(Indicate Mr., Ms., Mrs.)*<br><br>Mr. Alimereo English | Home Phone *(Incl. Area Code)*<br>(b) (7)(C) 1 line redacted | Date of Birth |
|---|---|---|
| Street Address<br>(b) (7)(C) 1 line redacted | City, State and ZIP Code<br>Bay Minette, AL 36507 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two are named, list under PARTICULARS below.)*

| Name<br><br>Chuck Stevens Automotive, Inc. | No. Employees, Members<br><br>200+ | Phone No. (Incl. Area Code)<br><br>(251) 937-1000 |
|---|---|---|
| Street Address<br>400 S US 31 | City, State and ZIP Code<br>Bay Minette, AL 36507 | |

| Name | No. Employees, Members | Phone No. (Incl. Area Code) |
|---|---|---|
| Street Address | City, State and ZIP Code | |

| DISCRIMINATION BASED ON *(Check appropriate box(es).)*<br><br>RACE    COLOR    SEX    RELIGION    NATIONAL ORIGIN<br><br>RETALIATION    AGE    DISABILITY    GENETIC INFORMATION<br><br>OTHER *(Specify)* | DATE(S) DISCRIMINATION TOOK PLACE<br>Earliest                    Latest<br><br>03/13/2020    07/02/2020<br><br>CONTINUING ACTION |
|---|---|

THE PARTICULARS ARE *(If additional paper is needed, attach sheet(s))*:   420-2020-02988

1. I am a man of African-Ancestry.
2. I began working for the Respondent on or about February 1, 2019.
3. I worked as a Floor Manager.
4. I consistently ranked as one of the top producing salespeople at the Respondent's Dealerships.
5. The Respondent had not disciplined me for my conduct or my performance before the incidents that support this Charge.
6. On or about March 13, 2020, a co-worker, Steven Bradley, sent me sexually explicit photos. The photos had gay or transgender themes.
7. I asked Bradley to stop because I did not welcome the explicit material, and I reported the inappropriate conduct to my manager as I had to do under the company's policy.
8. Soon after I complained of the harassing photos, Bradley and the managers investigated me for allegedly "stealing leads."
9. In my job as floor manager, I was given the ability to sell customers who came to my store vehicles located at the Respondent's other dealerships.
10. Because I had that ability, I was given access to the vehicles at the other locations.
11. This access not only allowed me to make more sales commissions, but it also boosted the sales revenue at the other store.
12. After my complaint, the company took away my access to Leads at Bradley's location, limiting my opportunity to make commissions.
13. On or about June 25, 2020, I took ill with COVID-19.
14. I reported to the company I would need to quarantine and presented the company with a note from my doctor, showing I had been diagnosed with COVID-19.
15. I reported my need for leave to Thomas De Santi, and he relayed that information to Sharon Stevens, the owner's wife.
16. When Stevens learned of the positive result, she contacted me and said, "What is this I hear about you having Corona?"

*Fonteneau Firm LLC — Lawyers for Working People*

Received by EEOC on 09/02/2020

17. I told Stevens I would need to take some time off because I tested positive for COVID-19.
18. She asked me for the note.
19. My doctor provided her with a note telling her of the diagnosis.
20. She then told me I needed to send her the actual lab reports.
21. I told her I would try but that I wanted to know about the pay I would receive under the Families First Act.
22. She told me she would not see me unless she saw the lab results.
23. I told her she was supposed to go through Human Resources to get the certification for my FMLA.
24. She told me that if I did not supply her the lab results personally, she would not pay me.
25. I asked her why she had paid my white female co-workers without seeing the actual lab results.
26. Stevens said she had not been paid the tax credits she was due, and she would not pay it again.
27. Stevens ended the conversation to talk to her attorney.
28. When she called me back, she told me, "Alabama is an at-will state," and fired me.
29. I told her that what she was doing was discriminatory.
30. Stevens replied that she could not be a racist because she had a mixed-race child.
31. I told Stevens that many slaveholders had mixed-race children.
32. She hung up.
33. Then she said that I resigned. I never resigned from my employment. She ended my employment.
34. Other employees, who were white women, took leave for Coronavirus.
35. Other employees who had not complained about sexual harassment took leave for Coronavirus.
36. Other employees who were not Black and who had not complained about racism or inappropriate sexual texting did not have their ability to earn commissions limited and were not terminated for seeking federally guaranteed leave under the Family and Medical Leave Act and paid for their leave under the Families First Act.
37. Other employees who were not Black Males and had not complained about sexually harassing photo text messages, did not have to provide the actual lab reports to substantiate their illnesses after their doctor had certified their need for leave by writing a note to the Respondent.
38. Other employees who were not Black males, who had reported harassment or discrimination were given the required FMLA notices after they reported they had a serious health condition that would require them to be absent from work for over three days.

The preceding facts support my belief that the Respondent violated Title VII of the Civil Rights Act by discriminating and retaliating against me based on race and sex and for reporting harassing and discriminatory conduct.

The Preceding facts support my belief that the Respondent violated 42. USC. § 1981 by discriminating and retaliating against me because of my race and my reports of sexually harassing messages and racial discrimination.

The Preceding facts also support my belief that the Respondent violated the Family and Medical Leave Act and the statutes above, by terminating my employment, failing to give the required notices and requiring me to give medical information not required by the statute and for which white female employees were not also required to provide.

| | |
|---|---|
| I want this Charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the | NOTARY–*When necessary for State or Local Agency Requirements* |
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above Charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| 08/30/2020 _____     _____ Date                    Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |
| processing of my Charge in accordance with their procedures. | |

**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
MOBILE DIVISION**

**Alimireo English,**

        **Plaintiff(s),**

**v.**                                           **Case No.:**

**Chuck Stevens Automotive, Inc.,
Sharon Stevens, and Vernon Pugh
III,**

        **Defendant(s).**

**EXHIBIT B**

EEOC Form 161 (11/2020)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

To:   **Alimereo English**
      (b) (7)(C)  1 line redacted
      **Bay Minette, AL 36507**

From:   **Birmingham District Office**
        **Ridge Park Place**
        **1130 22nd Street South**
        **Birmingham, AL 35205**

| | *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))* |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 420-2020-02988 | **IRAN CRUZ,** **Investigator** | (205) 651-7029 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ]   The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ]   Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ]   The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ]   Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X]   The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

[ ]   The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ]   Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

On behalf of the Commission

*for James C Love Sr*

May 19, 2021

Enclosures(s)

**BRADLEY A. ANDERSON,**
**District Director**

*(Date Issued)*

cc:   **CHUCK STEVENS DODGE CHRSYLER**
      **c/o Cassandra H. Kalupa**
      **Galese & Ingram, P.C.**
      **800 Shades Creek Pkwy.**
      **Ste. 300**
      **Birmingham, AL 35209**

**5 POINTS LAW GROUP, LLC**
**c/o Kira Fonteneau**
**2151 Highland Ave. S. Ste. 205**
**Birmingham, AL 35205**